UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| 456 Corp. d/b/a Natural Business Consulting Group,<br>    *Plaintiff,*<br><br>v.<br><br>United Natural Foods, Inc., et al.,<br>    *Defendants.* | Civil No. 3:09cv1983 (JBA)<br><br><br><br>January 10, 2011 |

RULING ON DEFENDANTS' MOTION TO DISMISS

Plaintiff 456 Corp., d/b/a Natural Business Consulting Group ("456") brings suit against Defendants United Natural Foods, Inc. ("UNFI"), UNFI Executive Vice President Daniel Atwood, and UNFI Vice President of Marketing John Raiche, to recover damages in breach of contract, quantum meruit, unjust enrichment, breach of covenant of good faith and fair dealing, fraud in the inducement, misrepresentation, and violations of the Connecticut Unfair Trade Practices Act, and for an accounting. Defendants now move to dismiss [Doc. # 35] the fifth and sixth causes of action of Plaintiff's Second Amended Complaint, for fraud in the inducement and misrepresentation, respectively, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, Defendants' Motion to Dismiss will be granted.

I.    Factual Background

In the summer of 2006, Daniel Atwood asked Marc Warsowe, co-owner and president of 456, if he would be interested in developing a credit card processing program ("Program") for UNFI. (Second Am. Compl. ¶¶ 2, 9–11.) Atwood told Warsowe that he wanted the program to increase customer loyalty and provide a new revenue source and that he "expected broad participation from UNFI's customers." (*Id.* ¶¶ 12–13.) According to

UNFI, during and after their Summer 2006 meeting, "Atwood expressly represented to Warsowe that the credit card processing program would have Atwood's full support, the full support of UNFI and the full support of UNFI's senior management and staff." (*Id.* ¶ 14.) Warsowe conducted research in September 2006 and produced a 24–page report ("Report") analyzing two program models: the Independent Service Organization ("ISO") Model and the Referral Model.[1] (*Id.* ¶ 17.) Warsowe recommended the ISO Model because it would generate more profit and allow UNFI to utilize its existing infrastructure and customer base. (*Id.* ¶¶ 17–19.)

Atwood "responded favorably" to Warsowe's Report and the parties, including Atwood and John Raiche, UNFI's then–national vice president of marketing, "commenced discussions to formalize the terms for proceeding with the project." (*Id.* ¶¶ 20–21.) In December of 2006, UNFI and 456 entered into a Binding Letter of Understanding ("Letter") for the ISO Model. (*Id.* ¶ 22.) The Letter calls for UNFI to (1) regularly meet with 456 to evaluate the Program, and (2) provide staff, facilities, and support services to ensure the success of the Program. (*Id.* ¶ 25.) The Letter also contains a "good faith best effort" clause in which "UNFI agrees to use its good faith efforts to promote and facilitate the most rapid market penetration and revenue growth possible." (*Id.* ¶ 26.) Approximately one month after the parties entered into the Letter of Understanding, in or about January of 2007, 456 began providing services for UNFI under the ISO Model. (*Id.* ¶ 29.) These services included

---

[1] The ISO Model sets up a "direct relationship with the credit card companies and, in exchange for fees, [UNFI] could directly market the program under its own name and bargain for lower fees for its large customer base." (Second Am. Compl. ¶ 18.) The Referral Model would allow UNFI to "solicit retailers to participate in a CCP program with an existing ISO for which it would be an agent. The Referral Model would not allow UNFI to use its own name on the merchant agreements with its customers." (*Id.*)

"identifying, researching, and interviewing candidates that specialized in servicing ISO Model customers." (*Id.* ¶ 30) However, according to the Second Amended Complaint, after several months of work, "[t]he Defendants decided that they were no longer interested in developing and instituting the ISO Model, despite numerous prior representations to the contrary. Defendants demanded that Warsowe revise the entire RFP using the Referral Model." (*Id.* ¶¶ 30-31.)

Defendants' rejection of the ISO Model forced 456 "to start over"; 456 "began researching an identifying new candidates for the Program" and ultimately recommended to UNFI that it enter into a contract with National Processing Company ("NPC") and conducted negotiations with NPC on UNFI's behalf. (*Id.* ¶¶ 31–34.) According to 456, after it developed and implemented the Program by soliciting NPC to participate under the Referral Model, "Raiche consistently made decisions that undermined [456] and the success of the Program." (*Id.* ¶¶ 34–35.)

> Raiche abandoned the stated goal of achieving rapid market penetration with the Program and the most revenue growth possible. By way of example, UNFI refused to instruct its distribution subsidiary, Select Nutrition, to transfer its large credit card processing business to NPC. Similarly, UNFI refused to instruct its retail subsidiary, Natural Retail Group, to transfer its credit card processing business to NPC even after NPC agreed to match that organization's current costs and provide additional marketing services at no charge.

(*Id.* ¶ 35.) 456 additionally claims that more than fifteen months after the beginning of negotiations between the parties, UNFI stated that it "would not accept credit cards for payment from [its] own customers, thereby further diminishing the earning potential of the Program, and by extension, [456's] earning potential under the deal between the parties." (*Id.* ¶ 36.)

In response to what 456 characterizes as acknowledgment "that UNFI owed compensation to [456] for services rendered, had failed to pay, and had changed the deal mid–stream," UNFI and 456 negotiated to amend the agreed–to compensation package, however 456 did not agree to an amendment. (*Id.* ¶ 38.) Nonetheless, UNFI made monthly payments of $6,000 to 456 for seven months before it stopped paying altogether. (*Id.*) 456 claims that "UNFI has not made any payments . . . from the Program's revenues, as called for under the Contract." (*Id.* ¶ 39.) In addition, 456 alleges that "Defendants failed to use [their] best and good faith efforts to promote and facilitate the most rapid penetration and revenue growth of the Program . . . [and] failed and refused to communicate with [456], thereby completely obstructing and effectively terminating [456's] ability to continue to work on the Program." (*Id.* ¶¶ 40–41.)

II.     Standard of Review

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and a defendant may move to dismiss a complaint that fails "to state a claim upon which relief can be granted." Fed R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Kuck v. Danaher*, 600 F.3d 159, 162–63 (2d Cir. 2010). A complaint will not survive a motion to dismiss if it relies on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," or if "the well–pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 129 S. Ct. at 1949–50.

III. Discussion

Defendants move to dismiss 456's fraud in the inducement (Count 5) and negligent misrepresentation[2] (Count 6) claims on the ground that 456 has failed to allege that Defendants made the required false representation of fact for either of those claims. (Mem. Supp. at 3–5.) Defendants argue that both fraud in the inducement and negligent misrepresentation claims require a plaintiff to establish "that a false representation was made as a statement of fact," which, when the statements at issue concern future acts, requires that the speaker had, at the time of making the statement, the present intent not to fulfill the promised future act. (*Id.* at 3–4.) According to Defendants, 456 alleges only that Defendants changed their minds, not that they intended at the time of the representations to 456, not to fulfill the acts promised. (*Id.* at 5.)

Under Connecticut law, the essential elements of a cause of action sounding in fraud, including claims of misrepresentation, and fraud in the inducement, are: "(1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act on it; and (4) that the latter did so act on it to his injury." *Updike, Kelly, & Spellacy, P.C. v. Beckett*, 269

---

[2] Plaintiff entitles its Sixth Cause of Action in the Second Amended Complaint only "Misrepresentation" without clarifying whether the claim is for intentional or negligent misrepresentation (Second Am. Compl. ¶¶ 68–73), and Defendants, in their Motion to Dismiss, similarly address the claim only as "misrepresentation" (Mem. Supp. [Doc. # 36] at 3–6). Plaintiff, in its Memorandum in Opposition to the Motion to Dismiss [Doc. # 38], however, clarifies that its "sixth cause of action sounds in negligent, not intentional, misrepresentation" (Mem. Opp'n at 6), and Defendants thereafter address it as such in their Reply in Support of the Motion to Dismiss [Doc. # 39] (Reply at 2–4). Defendants, at oral argument, reiterated through counsel that they accepted Plaintiff's characterization of count six as a claim for negligent misrepresentation.

Conn. 613, 643 (2004) (applying elements to misrepresentation claims); *see also Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 134 (2d Cir. 1997) (applying elements to fraudulent inducement claims under Connecticut law); *Harold Cohn & Co. v. Harco Int'l, LLC*, 72 Conn. App. 43, 52 (2002) (same). The elements for negligent, rather than intentional, misrepresentation vary slightly, yet retain the requirement that the defendant have made a misrepresentation of fact: "an action for negligent misrepresentation requires the plaintiff to establish (1) that the defendant made a misrepresentation of fact (2) that the defendant knew or should have known was false, and (3) that the plaintiff reasonably relied on the misrepresentation, and (4) suffered pecuniary harm as a result." *Nazami v. Patrons Mut. Ins. Co.*, 280 Conn. 619, 626 (2006).

"The requirement that a representation be made as a statement of fact 'focuses on whether, under the circumstances surrounding the statement, the representation was intended as one of fact as distinguished from one of opinion.'" *Meyers v. Cornwell Quality Tools, Inc.*, 41 Conn. App. 19, 28–29 (1996) (quoting *Crowther v. Guidone*, 183 Conn. 464, 468 (1982)). Although an opinion that a certain event will arise in the future cannot form the basis of a fraud or misrepresentation claim, "a promise to do an act in the future when coupled with a present intent not to fulfill it, is a false representation." *Id.* at 29 (defendants' representation to plaintiffs "that they [plaintiffs] had sufficient investment capital to operate a Cornwell dealership and that they could expect $65,000 in annual income from $200,000 in total sales" was not "merely a representation of an opinion that the plaintiffs' dealership may succeed in the future" but was a representation of fact that the plaintiffs "had sufficient capital to make a viable investment in a Cornwell dealership," and their representation that "that Meyers would be provided with adequate training and that Cornwell would repurchase

6

the tools him his dealership terminated" could also have reasonably been considered by the jury to be a promise to do an act in the future coupled with the present intent not to fulfill it). However, even though "a promise to do an act in the future" can be a misrepresentation of fact, only if the promisor knows or should know that the statement is false at the time it is made, i.e. only if the promise is "coupled with a *present intent* not to fulfill it," is that statement a misrepresentation of fact. *Id.* (emphasis added); *see Glazer v. Dress Barn, Inc.*, 274 Conn. 33, 74–76 (2005) (finding that a jury reasonably could have found that Dress Barn should have known that its representations of when it would complete due diligence for and the acquisition of a target company "were false when made"). A promise to do an act in the future is not a misrepresentation if, rather than being false when made, the promise is instead not acted upon because the promisor simply changes his or her mind at a later date.

456 is correct that "[p]romising to provide support, and then failing to do so, . . . involves matters of fact, rather than opinion," (Mem. Opp'n at 8). In agreeing "to use its good faith best efforts to promote and facilitate the most rapid market penetration and revenue growth" (Second Am. Compl. ¶ 26), UNFI did not merely express an opinion that Program would enjoy "rapid market penetration and revenue growth," but stated, as a representation of fact, that UNFI would support the Program in good faith. *See Meyers*, 41 Conn. App. at 28–29. UNFI's, Atwood's, and Raiche's "assurances that a robust credit card processing program would have [their full support] and that they would use their good faith best efforts to promote and facilitate the most rapid market penetration and revenue growth" (Second Am. Compl. ¶ 28), were similarly "promise[s] to do an act in the future," and therefore statements of fact. *Meyers*, 41 Conn. App. at 28–29. However, even though

7

these promises were representations of fact, without a present intent not to fulfill the promises, they could not be *mis*representations of fact. *Id.*; *Glazer*, 274 Conn. at 74–76.

Under the standard articulated in *Iqbal*, 129 S. Ct. at 1949–50, Plaintiff has failed to set out in its Second Amended Complaint sufficient factual matter to plausibly suggest that at the time Defendants promised to support the Program they intended not to fulfill the promise. Rather, Plaintiff's allegations indicate exactly the opposite, that only some time after their promises did Defendants change their mind and decide not to support the Program. 456 alleges that UNFI "agree[d] to use its good faith best efforts" in the December 2006 Letter of Understanding and that following the execution of that letter, UNFI, Atwood, and Raiche continued to assure 456 that the Program had their support. (Second Am. Compl. ¶¶ 22, 26, 28.) According to 456, only after it "spent several months" working on the ISO Model did the Defendants reject the ISO Model and "decide[] they were no longer interested in developing and instituting the ISO Model, despite numerous *prior* representations to the contrary." (*Id.* ¶¶ 29–31 (emphasis added).) The sequence alleged by 456 in its Second Amended Complaint, coupled with its clear chronological language, presents a claim that Defendants decided not to support the ISO Model subsequent to their prior pledges of support rather than contemporaneously with those pledges. In light of this factual matter, and in the absence of any factual allegation in the Second Amended Complaint that Defendants intended not to fulfill their promises at the time they were made, 456 has failed to allege a misrepresentation of fact in connection with its fraud in the

inducement and negligent misrepresentation claims and those counts therefore fail to state claims for relief that are plausible on their face.[3]

IV.     Conclusion

For the reasons stated above, Defendants' Motion to Dismiss [Doc. # 35] the Fifth and Sixth Causes of Action of Plaintiff's Second Amended Complaint is GRANTED.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 10th day of January, 2011.

---

[3] Defendants also argue in their Motion to Dismiss that 456 fails to allege fraud in the inducement and negligent misrepresentation with particularity as required by Federal Rule of Civil Procedure 9(b). However, because the Court finds that 456 has failed to state claims for fraud in the inducement and negligent misrepresentation that are plausible on their face under Rule 12(b)(6) and *Iqbal*, it will not reach Defendants' Rule 9(b) particularity argument.